# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* N.L.

No. 18-0745 (Monroe County 18-JA-3)

**FILED**

**January 14, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father M.L., by counsel Martha J. Fleshman, appeals the Circuit Court of Monroe County's July 26, 2018, order terminating his parental and custodial rights to N.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn Felton-Ernest, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Amy L. Mann, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent, denying his motion for an improvement period, and terminating his parental and custodial rights rather than imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2018, the DHHR filed a petition alleging that four-year-old N.L.'s biological mother's parental rights had been previously terminated, but petitioner continued to allow the mother to have contact with the child. The DHHR alleged that the mother recently gave birth to a child in Virginia and that child was exposed to drugs in utero. According to the DHHR, the mother provided authorities in Virginia with petitioner's address and phone number as her contact information. Additionally, the DHHR alleged that the child was interviewed by a Child Protective Service ("CPS") worker and that she disclosed that she had seen her mother, but that petitioner told her to lie about seeing the mother. The DHHR alleged that petitioner first denied

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

that the mother had contact with the child, but then later stated "you need to understand that sometimes circumstances arise." Petitioner waived his preliminary hearing.

The circuit court held an adjudicatory hearing in June of 2018, during which a DHHR worker from Virginia testified that, during her investigation into the issues of the mother's abuse of a different child in Virginia, the mother disclosed to the worker that petitioner continued to allow her to see N.L. The worker testified that she called petitioner's cell phone number, which the mother had given as her contact information, and left a message with petitioner for the mother. The worker further testified that the mother called her back from petitioner's cell phone. Additionally, the worker testified that she transported the mother to petitioner's home on one occasion. A West Virginia DHHR worker testified that petitioner's previous abuse and neglect petition was dismissed in March of 2018. During that case, the worker informed petitioner that the mother could have no contact with the child after the termination of her parental rights. Further, this worker testified that she interviewed the child, who disclosed that she continued to see the mother, but that she was not supposed to tell anyone.

Petitioner testified that the mother came to his home unannounced twice and that he did not let her in the house either time. Petitioner admitted that the child saw her mother on both occasions. Petitioner refuted the claim made by the Virginia DHHR worker and stated that the mother did not call the worker from his cell phone. Petitioner explained that he passed the worker's message to the mother at some point. Petitioner also testified that he did not see any danger in allowing the child to see her mother while he supervised any contact. However, petitioner acknowledged that the circuit court ordered that the mother have no contact with the child, and he said he would respect that order. Finally, the maternal grandmother testified that she was present for two instances when the mother went to petitioner's home to collect some belongings. The grandmother confirmed that petitioner told the mother that she was not supposed to be at the house and that the mother left afterwards.

Ultimately, the circuit court found that petitioner continued to allow his child to have contact with the mother whose rights had been previously terminated and who was an active drug user. Further, the circuit court concluded that petitioner emotionally abused the child by requiring that she keep the contact with the mother a secret. Accordingly, the circuit court adjudicated petitioner as an abusing parent.

In July of 2018, the circuit court held the final dispositional hearing and heard argument regarding petitioner's motion for a post-dispositional improvement period, which the circuit court denied. Testimony was presented from two DHHR workers, petitioner, and the foster father. The evidence presented detailed petitioner's prior improvement period and the services provided to him. The DHHR workers opined that petitioner would comply with services if granted an improvement period, but that petitioner would likely again attempt to deceive the DHHR regarding contact between the mother and the child. Additionally, the DHHR indicated that further services would not correct the conditions that led to the filing of the petition. Petitioner testified that the mother did not live in his home and that he never invited her to see the child. Petitioner further testified that in the future he would obtain a domestic violence protective order to keep the mother from coming to his home unannounced. Finally, the foster father testified that he had seen the mother on the porch of petitioner's home on two occasions.

Ultimately, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected because petitioner continued to allow the mother to have contact with the child despite knowing that the mother's parental rights were terminated and that she continued to abuse controlled substances. Further, the circuit court found that petitioner coached the child to keep her contact with the mother a secret, which demonstrated petitioner's knowledge that the contact should not be taking place and his willingness to thwart the efforts of the DHHR to protect the child from exposure to her drug-addicted mother. Accordingly, the circuit court terminated petitioner's parental and custodial rights in its July 26, 2018, order. Petitioner now appeals that order.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner first argues that the circuit court erred in adjudicating him as an abusing parent. Petitioner asserts that the DHHR's witnesses presented conflicting testimony and that the manner in which the child was interviewed rendered the child's statements incredible. We disagree. We have held that

> "W.Va. Code [§] 49-6-2(c) [now West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

---

[2]The mother's parental rights were terminated during prior proceedings. According to the parties, the permanency plan for the child is adoption in her current relative foster placement.

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (citations omitted). Further, pursuant to West Virginia Code § 49-1-201, a "neglected child" is a child

> [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian[.]

Here, sufficient evidence was presented to adjudicate petitioner as an abusing parent.[3] The evidence presented clearly showed that petitioner allowed the mother to continue to have contact with the child and that the mother was an inappropriate person due to the previous termination of her parental rights and her continued drug use. Testimony was presented that both the child and the mother admitted to having continued contact despite the circuit court's prior order banning such contact. Additionally, two other witnesses stated that the mother was at petitioner's home on multiple instances. This continued contact was clearly a failure to provide appropriate supervision on petitioner's part. Further, and more troubling, the child stated that petitioner directed her to lie about the contact with her mother. The circuit court correctly found that this constituted emotional abuse to the child.

Although petitioner argues that the testimony regarding the mother's continued contact was contradictory, and, therefore, incredible, this Court has previously held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). Accordingly, we rely on the circuit court's assessment of the DHHR employee's credibility concerning her discussions with the child. Further, petitioner argues that that the child's statements to the DHHR worker were incredible because the interview was not recorded and the child was not subject to further forensic interviewing. However, these issues were not raised below. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n.20 (1999)." *Noble v. W.Va. Dep't of Motor Vehicles*, 223 W.Va 818, 821, 679 S.E.2d 650, 653 (2009). Petitioner did not object to the interviewing DHHR worker's testimony regarding the child's statements and was given an opportunity to cross-examine the worker about the manner in which the interview was performed. Therefore, we find that the circuit court correctly adjudicated petitioner as an abusing parent based on the evidence presented.

Second, petitioner argues that the circuit court erred in denying his motion for an improvement period. Petitioner asserts that he expressed an understanding of the issues that led to the filing of the petition and that the DHHR workers testified that he would "pass" an

---

[3]"'Abusing parent' means a parent, guardian or other custodian . . . whose conduct has been adjudicated by the court to constitute child abuse *or neglect* as alleged in the petition charging child abuse or neglect." W.Va Code § 49-1-201. (Emphasis added).

improvement period. However, upon our review of the record, we find petitioner's argument unpersuasive. West Virginia Code § 49-4-610(2) provides that a circuit court may grant a post-adjudicatory improvement period when "[t]he respondent moves in writing for the improvement period" and "demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period[.]" The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements."). Further, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.,* 212 W.Va. 443, 448, 573 S.E.2d 354, 359 (2002).

The circuit court correctly denied petitioner's motion for an improvement period because it was unlikely that petitioner would improve. The evidence showed that petitioner was provided multiple services throughout his previous abuse and neglect case, which was dismissed only one month before these proceedings began. Additionally, petitioner acknowledged that he was aware of the circuit court's prohibition on contact between the child and her drug addicted mother. Despite services and the DHHR's insistence, the evidence showed that petitioner continued to allow contact between the two and even directed the child to lie about that contact. Although a DHHR worker testified that petitioner would "pass" the improvement period, the worker also expressed concern that petitioner would again attempt to deceive the DHHR and continue to allow contact. Petitioner also argues that the circuit court denied him an opportunity to fully present his argument regarding his motion on an improvement period. However, it is clear from our review that petitioner's counsel provided a lengthy and detailed argument regarding the motion. While we acknowledge that the circuit court abruptly ended the DHHR's argument opposing the motion and petitioner did not have an opportunity to rebut the DHHR's argument, we find that petitioner was granted a sufficient opportunity to advocate for his position. Accordingly, we find no error in the circuit court's denial of petitioner's motion for an improvement period.

Finally, petitioner argues that the circuit court erred in terminating his parental and custodial rights rather than imposing a less-restrictive dispositional alternative. Petitioner asserts that there was a reasonable likelihood that the conditions of abuse and neglect could be substantially corrected through an improvement period. We find no merit to petitioner's argument. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) provides that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent "ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child[.]"

The circuit court correctly terminated petitioner's parental and custodial rights upon findings that there was no reasonable likelihood that the conditions of abuse and neglect could be

substantially corrected and that termination was necessary for the welfare of the child. Petitioner willfully exposed the child to continued contact with the mother despite knowing that the contact was prohibited. Further, petitioner failed to acknowledge his conduct by stating that he did not see the danger in allowing contact between the two while he supervised. Moreover, petitioner was already provided services by the DHHR in his previous case that addressed restricting contact between the mother and child. Therefore, it is unlikely that additional services would be effective at treating the conditions when petitioner willfully disregarded those instructions just one month after those services concluded.

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4. The circuit court properly found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected based on petitioner's prior services and his lack of meaningful change. In addition, it was necessary for the child's welfare to terminate petitioner's parental and custodial rights in order to ensure she would have no additional contact with her abusing mother. Accordingly, we find no error in the circuit court's termination of petitioner's parental and custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 26, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: January 14, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison